**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ABUBAKA A. HAQQ )<br>　　Plaintiff )<br> )<br>vs. )<br> )<br>WILLIAM WOLFE, et al. )<br>　　Defendants. ) | C.A.No. 03-277 Erie<br>District Judge McLaughlin<br>Magistrate Judge Baxter |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I     RECOMMENDATION**

　　It is respectfully recommended that Defendants' motion to dismiss [Document #44] be granted.

**II     REPORT**

　　Plaintiff, Abubaka Haqq, an inmate at the State Correctional Institution at Albion in Pennsylvania, filed this civil rights action. Plaintiff has named Superintendent William Wolfe and Counselor David Vroman as Defendants and alleges that his constitutional rights were violated:

> On the above day [July 2, 2003] and [illegible], I received a letter from my sister informing me that she had been trying to make contact with me to ifrome me of our mother death, November 16, 2002. When she did not heir from me, she then write the prison Superintendent makeing him awair of our mother death and her wanting to contact me, at this time the Superintendent worte my sister informing her that I was still here at Albion State Prison, and alive. But never did he contact me and maid me awair of my mother death or to see why I was not geting my mails. To learn about my mother death one year later, was very hard for me to deal with and I have corresponsdent letter from the Superintendent, and my sister as well.
>
> This action I see as retaliation from my law suite file 09/16/02. And which is being review presantly I will like to add. This to my law suite or make the Court awair of what I'm dealying with now.

Document # 6. As relief, Plaintiff seeks monetary damages.

　　Defendants have previously moved to dismiss Plaintiff's Eighth Amendment claim,

1

which motion was granted. However, the retaliation claim and the interference with mail claim remain pending as Defendants did not move to dismiss them.

Defendants have now moved for summary judgment on the two remaining claims. Document # 44. Plaintiff has filed an Opposition Brief. Document # 58. The issues are fully briefed and are ripe for disposition by this Court.

### A.    Standards of Review
#### 1.    *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears "'beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines v. Kerner, 404 U.S. 519, 520-521(1972), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

#### 2.    Motion for summary judgment

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted

if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(e) further provides that when a motion for summary judgment is made and supported, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Id.

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. See Fed.R.Civ.P. 56(c); Krouse v. American Sterilizer Co., 126 F.3d 494, 500 n.2 (3d Cir. 1997). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3d Cir. 1990). Further, "[R]ule 56 enables a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'" Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990) quoting Lujan v. National Wildlife Federation, 497 U.S. 871 (1990).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Matsushita Elec. Indus. Co. v Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322; Country Floors, 930 F.2d at 1061.

A material fact is a fact whose resolution will affect the outcome of the case under

3

applicable law. Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986). Although the court must resolve any doubts as to the existence of genuine issues of fact against the party moving for summary judgment, Rule 56 "does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegation or suspicions." Firemen's Ins. Co. of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982). Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 247-249.

### C. The Prison Litigation Reform Act
#### 1. The Exhaustion Requirement

Defendants argue, *inter alia*, that summary judgment should be granted because Plaintiff has failed to exhaust his administrative remedies in accordance with the Prison Litigation Reform Act. The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), provides:

> no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility until such administrative remedies as are available are exhausted.

Id.

The requirements that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. Porter v. Nussle, 534 U.S. 516 (2002). See also Concepcion v. Morton, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement). Administrative exhaustion must be completed prior to the filing of an action. McCarthy v. Madigan, 503 U.S. 140, 144 (1992). Thus, federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies. Grimsley v. Rodriquez, 113 F.3d 1246 (Table), 1997 WL 2356136 (Unpublished Opinion) (10th Cir. May 8, 1997).[1]  A plaintiff need not affirmatively plead

---

[1] Importantly, a plaintiff's failure to exhaust his administrative remedies does not deprive the district court of subject matter jurisdiction. Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) ("...[W]e agree with the clear majority of courts that § 1997e(a) is *not* a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject

exhaustion, but exhaustion is an affirmative defense which is waived if not properly presented by a defendant. Ray v. Kertes, 285 F.3d 287 (3d Cir. 2002) (holding that "no provision of the PLRA requires pleading exhaustion with particularity," while construing the PLRA requirements in light of the recent Supreme Court decision in Swierkiewicz v. Sorema, N.A., 534 U.S. 506 (2002)).

The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow. Nyhuis, 204 F.3d at 73 (by using language "no action shall be brought," Congress has "clearly required exhaustion"). There is no "futility" exception to the administrative exhaustion requirement. Ahmed v. Dragovich, 297 F.3d 201, 206 (3d Cir. 2002) citing Nyhuis, 204 F.3d at 78.

### 2.     The Procedural Default Component of the Exhaustion Requirement

The United States Court of Appeals for the Third Circuit has explicitly held that the exhaustion requirement of the PLRA includes a procedural default component, by analogizing it to the exhaustion doctrine (with its corollary procedural default component) in the habeas context. Spruill v. Gillis, 372 F.3d 218, 228-229 (3d Cir. June 18, 2004).[2] The Circuit explained:

> We believe that Congress's policy objectives will be served by interpreting § 1997e(a)'s exhaustion requirement to include a procedural default component. Based on our earlier discussion of the PLRA's legislative history, [...] Congress seems to have had three interrelated objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits. Each of these goals is better served by interpreting § 1997e(a)'s exhaustion language to include a procedural default component than by interpreting it merely to require termination of all administrative grievance proceedings.

Id. Having concluded that the PLRA includes a procedural default component, the Court then

---

matter jurisdiction.").

  [2] There is an emerging split of authority among the Circuits on this issue. Compare Ross v. County of Bernalillo, 365 F.3d 1181 (10th Cir. 2004), and Pozo v. McCaughtry, 286 F.3d 1022 (7th Cir. 2002), with Thomas v. Woolum, 337 F.3d 720 (6th Cir. 2003).

indicated that "prison grievance procedures supply the yardstick for measuring procedural default." Id. at 231.

### 3. Exhaustion and Procedural Default applied

No analysis of exhaustion may be made absent an understanding of the administrative process available to state inmates. The DC-ADM 804 grievance system, available to state prisoners, consists of three separate stages. First, the prisoner is required to timely submit a written grievance for review by the facility manager or the regional grievance coordinator, who responds in writing. Second, the inmate must timely submit a written appeal to intermediate review, and again he inmate receives a written response. Finally, the inmate must submit a timely appeal to the Central Office Review Committee, and the inmate will receive a final determination in writing. See Booth v. Churner, 206 F.3d 289, 293 n.2 (3d Cir. 1997), aff'd. 532 U.S. 731 (2001).

Defendants argue that Plaintiff has not exhausted his claim though the highest level of the administrative remedy process. In support of this argument, Defendants provide the Verification of Kristen Reisinger, Assistant Chief Grievance Coordinator for the Department of Corrections. Ms. Reisinger deposes that Plaintiff attempted to exhaust Grievance Number 56561 to final review, but failed to comply with the requisite procedures. Document # 44, Attachment E.

In opposition, Plaintiff baldly asserts that Ms. Reisinger is a "lying disciple of Wolfe" and lists his total exhaustion of his grievances as:

| | |
|---|---|
| Date filing | 7/5/03 |
| Review Date | 7/10/2003 |
| Answer Date | 7/20/2003 |
| Appeal Date | 7/24/2003 |
| **Camp Hill Date** | **8/14/2003** |

Document # 58, unnumbered page 12.

Defendants have provided the August 14, 2003 letter of Sharon Burks, Acting Chief

Grievance Coordinator to which Plaintiff refers as the final level of exhaustion. Contrary to Plaintiff's position that this letter shows he filed the final review, the letter actually states:

> Upon review of this letter/documents, I have decided to file this letter without action.
>
> This action is being taken due to your repeated failure to comply with the provisions of the DC ADM 804, Inmate Grievance System, section VI. D., 1f., effective January 1, 2001. This policy specifically identifies the documents required for a proper appeal to final review. Additionally, the revised policy, effective May 1, 2002 under section VI. D., 1h., provides the same instructions.
>
> Our records indicate that you are more than familiar with the grievance process based upon the number of grievances you have filed; therefore, you should not have to be told each time you file an appeal of the documents required. You are hereby advised that any subsequent appeals to this office that do not include the necessary documentation in accordance with the above-cited provisions will be immediately dismissed.

Document # 44, Attachment E.

While Plaintiff may have technically exhausted his grievance by raising it at each of the three levels of review provided for by DC-ADM 804, the claim has been procedurally defaulted as it was not properly presented for final review by the Central Office Review Committee. See Spruill, 372 F.3d 218.[3]

Accordingly, the Defendants motion for summary judgment should be granted.

## III    CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendants' motion to dismiss [Document #44] be granted.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4B, the parties are allowed ten (10) days from the date of service to file written objections to this report. Any party opposing the objections shall have seven (7) days from the

---

[3] This Court also notes that Plaintiff has never specifically raised the issue of retaliation through the administrative remedy process. Again, the procedural default doctrine applies as Plaintiff is now time-barred under state regulation from attempting to exhaust the retaliation claim. See Spruill, 372 F.3d 218.

date of service of objections to respond thereto. Failure to timely file objections may constitute a waiver of any appellate rights.

                                                    <u>S/ Susan Paradise Baxter</u>
                                                    SUSAN PARADISE BAXTER
                                                    Chief United States Magistrate Judge

Dated: July 25, 2005